May it please the court. My name is Kurt Iverson and I represent Mr. Yao Gong Ren. At this time, I'd like to reserve one minute for rebuttal. Mr. Ren fled China because he suffered persecution at the hands of Chinese police. Can you speak up just a little bit? Mr. Iverson, I'm having a hard time. This room is terrible and you have to talk right into the microphone. Mr. Ren fled China on the basis of persecution he suffered at the hands of Chinese police on the basis of his Christian beliefs. Upon his arrival in the United States, Mr. Ren filed petitions for asylum, withholding removal and protection under the Convention Against Torture. An immigration judge denied Mr. Ren's relief all three forms of relief because she found, first, that Mr. Ren's testimony was incredible, and second, that Mr. Ren had failed to provide readily available corroborative evidence. Mr. Ren asked this court to reverse the immigration judge's holding on the credibility finding and vacate the corroboration finding and remand this case for further proceedings. Let's start with corroboration. The immigration judge asked for two things. He asked, one, that he get from his wife an affidavit or other information verified before the consulate, either a bail receipt or some affidavit from the wife verifying his statements. He also asked that the pastor of the church come to testify that Mr. Ren did attend the church with some regularity. And this was after Mr. Ren had submitted two letters from members of the congregation or his small group saying in the letters that he was a regular attendee. Are you – what's your response to the fact that the – Mr. Ren did not, after being given time to do so, respond to either of those requests for corroboration? Your Honor, Mr. Ren was asked to provide any evidence that he could provide about his detention in China and about his church activities in the United States. The I.J. was not very specific about exactly – Well, he specifically asked for the pastor, that the pastor come testify. Yes, Your Honor, but in the context of the I.J.'s request on page 110 of the record, the I.J. did specifically say that Mr. Ren could provide whatever evidence he thought he needed to provide to corroborate his claim. Well, was that at the – after the – at the final hearing when he had all the information and said, I want the pastor to come? Your Honor, at the second to last hearing, that is when the I.J. requested that Mr. Ren provide additional corroborative evidence. And it was after that final hearing – sorry, the second to last hearing that Mr. Ren presented the letters. Mr. Ren presented the letters at the final hearing. He had submitted two documents at the second to last hearing in addition to those letters that he presented at the final hearing. However, the I.J. did not accept those letters into evidence at that time. And we don't know for sure that those are the same letters that Mr. Ren provided at his final hearing. You know, on May 26, 2006, the I.J. said it would be most helpful for him to get the bail receipt. Yes, Your Honor. And then comes up no – no bail receipt, no explanation for the lack of bail receipt. Your Honor, at the May 26 hearing, Mr. Ren said that maybe a receipt existed and that perhaps – maybe a receipt. Okay. Fair enough. So he gives him a continuum so he can get the receipt. Comes the next hearing, no receipt, no explanation. What do we do about that? Your Honor, it's partly the I.J.'s duty to develop the record with regard to the testimony about corroborative – with regard to whether or not a Petitioner can provide the corroborative evidence. And in this case, the I.J. did not develop the record and asked Mr. Ren, why didn't you provide the receipt at that final hearing? That's not enough. The I.J. says you ought to provide it. Then the next hearing, the guy doesn't provide it. He's got to take – turn it into a two-step thing and say, I asked you for it. Why didn't you bring it? No, Your Honor. It's not enough simply that he didn't provide it because we don't know that this receipt even existed. I understand. But then, you know, the I.J. says, I want to see it. I'm continuing it so that you can produce it. And then at the next hearing, Mr. Ren doesn't say anything further about it. Again, Your Honor, there is a duty on the I.J. to help develop the record with regard to whether a Petitioner can provide it. Well, yes, but the I.J. doesn't actually have to produce the corroborating evidence. No, Your Honor. That's correct. However, the I.J., when Mr. Ren did not provide the bail receipt, first of all, the I.J. did not specifically request that bail receipt at the second to last hearing. The I.J. asked Mr. Ren to provide any evidence that he thought he needed to provide to corroborate his claim. And although the I.J. did suggest that the bail receipt was one thing that would prove and help make his case, Mr. Ren was not able to provide that bail receipt for whatever reason, and the I.J. did not inquire into why he didn't provide the bail receipt at the final hearing. And so we have no way to ascertain whether or not that receipt was reasonably obtainable, which is the standard under the Real ID Act. Without any ability of this Court to ascertain that aspect, this Court should remand on the corroboration issue to find out why or what Mr. Ren's explanation was for not providing this receipt and whether or not it was reasonably obtainable. That is the standard. Did Mr. Ren have counsel at these proceedings? Mr. Ren had counsel at the immigration hearings. Wouldn't it be reasonable for the I.J. to assume that if Mr. Ren was not going to produce the receipt that Judge said would be helpful to have, the lawyer might offer some explanation for why he showed up at the second hearing without the receipt? Yes, Your Honor. However, it is still a duty of the I.J. to help develop the record when the applicant doesn't in regards to corroborative evidence. And when the – when his counsel didn't suggest that he take the stand and explain why the evidence – why he didn't present that bail receipt, the I.J. should have questioned Mr. Ren, as the I.J. had done throughout the proceedings. The I.J. had taken an active role in directly questioning Mr. Ren concerning questions she had regarding his corroborative evidence and his credibility. And in this final – at this final hearing, when the I.J. thought that this was a dispositive issue, the receipt, whether or not Mr. Ren had provided it, she did not take that active role that she had taken in prior hearings and ask specifically why he didn't provide the receipt and give an explanation for why it was even reasonable for him to provide the receipt when we didn't know for sure that that receipt existed. Your Honors, in addition to the corroboration finding, which this Court should remand, the I.J. relied upon the credibility determination. And in making an adverse credibility determination, the I.J. cited five factors. Three of them related to discrepancies, supposed discrepancies between Mr. Ren's testimony and his declaration, and two were supposed inherent implausibilities in Mr. Ren's claim. However, there were no implausibilities in Mr. Ren's claim, and the three discrepancies that the I.J. referred to were not actual discrepancies. First, the I.J. pointed out that Mr. Ren could not provide the year or the month of his arrest when he went to China. However, in the record, Mr. Ren clearly says that he was arrested in 2004, in two places, pages 68 and 90 of the record. So furthermore, Mr. Ren did narrow down the month of his detention to a three-month period, which included July. And in his declaration, he specified that July 13th was the day he had been arrested. So there was nothing inconsistent with regard to that first point. Second, the I.J. asserted that Mr. Ren was inconsistent with regard to the date of his baptism in China. However, Mr. Ren corrected himself on the stand with regard to that date and specified exactly the date that he specified in his declaration. And therefore, there was no inconsistency whatsoever with regard to the date of his baptism. Finally, the third discrepancy that the I.J. referred to was that Mr. Ren said that the raincoat incident happened on the second day of his detention in the declaration but on the third day in his testimony. And she found that that was a significant discrepancy because he had remembered details of his interrogation facility, but he couldn't remember the order in which the events occurred. However, this Court has held in Singh v. Gonzalez that whether or not a person can remember the order of events is not relevant to whether or not somebody actually suffered the persecutive treatment that he's claiming. What year is the Singh case that you just cited? I'm not sure it is a period. My point is it's before the Real ID Act became effective, isn't it? Yes, it is before the Real ID Act. Did the Real ID Act change some of these rules? The Real ID Act allows the I.J. to consider discrepancies that are minor. However, the I.J. must do so in the totality of the circumstances and all relevant factors. And when you look at the totality of circumstances in this case and the consistencies of Mr. Ren's statement in his testimony with his declaration versus this minor issue with whether or not he suffered this raincoat incident on the second or third day of his detention, in the totality of the circumstances, Mr. Ren was consistent, overwhelmingly consistent with his testimony and his declaration as to what happened to him during his detention and what happened after he why he fled and came to the United States and how he practiced his religion in the United States. I see my time is about to run out. Thank you. Thank you very much. May it please the Court, my name is Lance Jolly and I represent the Attorney General of the United States. This case involves both a credibility determination as well as an alternative finding that Ren failed to sufficiently corroborate his claim. As Ren's asylum application was filed after May 11, 2005, the real ID amendments applied to his case. The I.J. in his decision separated the issues regarding credibility and those regarding corroboration. However, in his appeal to the board, Ren only challenged the immigration judge's adverse credibility finding, thus he failed to exhaust his administrative remedies with respect to the corroboration issue. And as because the corroboration is a sufficient basis for denial of his application, there is no need to reach any other merits of the credibility or corroboration findings. Was he represented by counsel on the appeal to the board? I believe he was not. However, even if you liberally construe his appeal to the board, nowhere does he mention any issues regarding corroboration. He doesn't mention what the immigration judge expected of him. He didn't say that he has all this other evidence. If you look at the context of the decision, it's purely an adverse credibility appeal. And because he never mentioned any of the corroboration issues, even if you liberally construe his appeal to the board, he failed to exhaust the corroboration finding of the immigration judge. Are those two different findings? I mean, to me, the corroboration and adverse credibility kind of go hand in hand. They do. They blend in quite a bit. However, on page 26 of the administrative record, the IJ, I'll read the relevant part. As will be discussed below, the court finds the respondent has not provided credible testimony because of inconsistencies between the respondent's testimony and his declaration, as well as the inherent plausibility of his claim in comparison to his actions. Alternatively, the court finds that at best the respondent's testimony raises serious questions about his credibility, and by failing to provide a readily available corroborating evidence for his activities in China and in the United States, he has failed to meet his burden of proof of showing past persecution or a well-founded fear of future persecution. That underscores my point. It sounds like it's all part and parcel of the same thing. Well, well, I said I did establish that his life for freedom would have been threatened on account of his strong beliefs. So he said he established it. That's very good. It covers both credibility and corroboration. Well, it might. It's such a general claim. Three minutes out of your ten. I'm saying he didn't appeal properly. Do you want to talk about the merits in case you lose on that? No, we do not lose on the merits. Special evidence supports both average credibility and the corroboration. Well, let's get to that. OK, the corroboration finding. I guess we can start with that. The immigration judge, after his testimony, said, hey, I have some serious problems with your testimony. There's these specific inconsistencies between your declaration and your testimony. And I'm going to give you a chance to corroborate, to rehabilitate in a sense, your testimony. But he failed to do so. He only presented two letters that said he was an active member, but did not address the specific things that immigration wanted to see from him. And as such, the substantial evidence supports the immigration judge's corroboration finding. As with and to the average credibility finding, the immigration judge pointed to specific reasons for why he did not find Wren credible. And as such, the substantial evidence supports that. Well, one letter from a church official, the community coordinator, said he came to our church and joined our fellowship. He was baptized in our church. He said, I'm sorry I can't make it to the hearing, but here's my church telephone number. If there are any questions, call me on the telephone number. So he could have been reached by phone if they needed more testimony from him. As the immigration judge found, what would have been proper was to file a motion for a telephonic conference or something so where they can make the assurances necessary to have the members testify on his behalf. Well, that's a pretty formalistic reason to deny someone asylum that didn't make a motion for the phone. But when the immigration judge specifically stated, the letter only is very vague. And the immigration judge indicated that he wanted testimony about the frequency of Wren's visits, the extent of Wren's involvement, the dates of Wren's membership, and circumstances that Wren's gone to church. The mere saying he's an active member, and I'll answer your question, it just further postpones the hearing and did not satisfy the immigration judge that he's corroborated his claim. And even if you excuse him for this telephonic appeal, he did not submit any corroboration evidence with respect to the IDA's concerns about what happened in China. And his wholesale failure to corroborate his claim makes it so that this court should deny the petition for review. Now, with the average credibility finding, Wren could not specify the date of his arrest. He was inconsistent with the order and the timing of the events in China. He did not know. He claimed to have known the Lord's Prayer and did not. He gave some other thing that was clearly not. And the council had an opportunity to, on redirect, address why he did not identify something that he claimed to have known. And he never addressed why the statement didn't rehabilitate why he only went to church when he had nothing else to do. Well, he didn't say when he had nothing else to do. He said when he had to work, he could get odd jobs to support himself because he couldn't get a job. He said except when he had those odd jobs, he would go. That's not nothing else to do. Well, his testimony is at best, I think, confusing on to the point of when he actually goes to church. And that is why the immigration judge wanted further testimony or further evidence of what circumstances does he go to church, how often he goes to church. And because he did not provide that evidence, substantial evidence supports the immigration judge's findings. As substantial evidence supports the adverse credibility and corroboration findings, this Court should deny the petition for review. Thank you, counsel. Your Honor, I want to discuss the Lord's Prayer, the exhaustion issue and the corroboration issue quickly, if I could. Certainly. Starting with the Lord's Prayer, the Eighth, the Third and the Eighth Circuits have both held that doctrinal knowledge of a specific religion is not relevant to a claim. Could you, if you just push the microphone up, you're very tall. Sorry. The Third and Eighth Circuits have held that a petitioner's doctrinal knowledge of a specific religion is not relevant to his claims of persecution. And in this case, Mr. Wren never claimed that he was an expert in Christianity. And there's nothing to be an expert in. I know the Lord's Prayer, and I'm no expert in Christianity. Yes, Your Honor. Maybe Bert J. Silverman knows the Lord's Prayer. Do you know him? I've heard of it, yeah. But the problem here is he never said, I don't know what you're talking about, Judge. I don't know what you mean by the Lord's Prayer. He purported to recite the Lord's Prayer and obviously didn't. Yes, Your Honor. There is some question about whether Mr. Wren knew exactly what he was being asked to recite. When you look at the record I referred to in my brief, that there seemed to be some translation issue around whether or not he knew that the prayer was an actual prayer called the Lord's Prayer in English that he was being asked to recite. But anyway, it's irrelevant to Mr. Wren's claim of persecution. He had only been practicing Christianity for two years and seven months, according to his testimony, and more than half of that time he was in an underground church in China. We don't know that they were reciting the Lord's Prayer as part of that. There's nothing inherently involved. That's why he's got a lawyer there to say, you know, what do you know about the Lord's Prayer? Mr. Wren didn't say, I don't know what you're talking about, or we don't do it this way in China. He purported to make up a prayer and call it the Lord's Prayer. Yes, Your Honor. He did not provide an explanation, and the I.J. did not ask for an explanation surrounding why his recitation was incorrect. However, it's still irrelevant to his claim. It does not make his claim inherently implausible, the fact that he did not, if he did not know the Lord's Prayer. And that's what the I.J. was partly requesting credibility determination for. Well, putting it in context, the I.J. said, you know, you have a wife and child in China, and you say you're leaving your wife and child in China to come to the United States to practice Christianity. One would expect you to be a little more conversant with Christianity if that's the circumstances you're in. You don't likely leave your family there to be a Christian, and you don't even know the Lord's Prayer. That's the point of it. Yes, Your Honor, but it doesn't make his claim inherently implausible. If he didn't know the Lord's Prayer and was not able to recite it in court, it doesn't make it. His claim is that he was participating in an underground church in China, and that because of that participation, he suffered persecution at the hands of the Chinese police. It's not that he knew every aspect of the religion or even specifically. No, but it casts doubt on whether what he's saying is true, whether he's really a Christian or not. That's the point of it. Yes, Your Honor, but the I.J. asked or claimed that that made his – the I.J.'s position was that that made his claim inherently implausible, and Mr. Wren is simply saying that that does not make his claim inherently implausible. Your Honor, on the exhaustion issue, Mr. Wren was not represented by counsel when he filed his notice of appeal, and he did say specifically in his notice of appeal that he felt he established his case, and that goes to the corroboration issue, the fact that he felt he'd met the burden of proof. Finally, on the corroboration issue, the REAL-ID Act codifies the BIA's corroboration rule, and the Second, Third, and Eighth Circuits have built – have created a framework in order to analyze whether or not an I.J.'s corroboration ruling can be sustained on appeal. And that framework requires that the I.J. make an explicit credibility determination, second, explain why it is reasonable to expect that a Petitioner provide specific evidence, and third, that the I.J. assess the Petitioner's explanation for the lack of – for the failure to provide the evidence. And under this standard, applying this standard, this Court should find that Mr. Wren did – Mr. Wren was not given that opportunity to explain why he didn't present the evidence, and that was the I.J.'s duty to get that information on the record. And because of that, this Court should remand on the corroboration issue and allow Mr. Wren to provide an explanation and for the I.J. to develop a record around why certain evidence wasn't presented. Thank you. Thank you, Counsel. Case just argued will be submitted.
judges: Hug, Reinhardt, Silverman